IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**KENDRA JONES, Individually and as**
**Personal Representative on Behalf of**
**the Wrongful Death Beneficiaries of**
**TYRONE JONES, Deceased**                                                    **PLAINTIFF**

**v.**                           **CIVIL ACTION NO.: 3:23-CV-00455-GHD-JMV**

**QUITMAN COUNTY, MISSISSIPPI;**
**SHERIFF OLIVER PARKER, JR.,**
**Individually and in his Official Capacity;**
**And JOHN and JANE DOES 1-100**                                       **DEFENDANTS**

## ORDER GRANTING MOTION TO AMEND

This matter is before the court on Plaintiff's Motion [Doc. No. 59] for Leave to Amend Complaint, filed on May 16, 2024. Defendants responded in opposition [Doc. No. 64] on May 30, 2024, and Plaintiffs replied [Doc. No. 75] on June 13, 2024. With the court's permission, Defendants filed a sur-reply in opposition [Doc. No. 79] on June 20, 2024. Accordingly, the matter is now fully briefed and ripe for decision. For the reasons explained hereinafter, the motion for leave to amend is hereby **granted.**

### Background

The instant complaint was filed in state court on September 25, 2024, by Kendra Jones, individually and as personal representative on behalf of the wrongful death beneficiaries of the deceased, Tyrone Jones. The action is one brought pursuit to 42 U.S.C. § 1983 for death, by apparent suicide, of Tyrone Jones on June 19, 2022, while he was a pretrial detainee in the Quitman County Jail.

The defendants, when suit was filed, were Quitman County, MS; Sherriff Oliver Parker, Jr., individually and in his official capacity; and John and Jane Does 1-100. The case was

removed to this Court on November 29, 2023. On December 22, 2023, the defendants, Quitman Co. and the sheriff, filed their responsive pleading and on January 29, 2024, this Court entered its Case Management Order, whereby it set the following deadlines: motions for joinder of parties and amendments to the pleadings - March 14, 2024; the discovery deadline - July 29, 2024; the deadline for all dispositive motions and *Daubert*-type motions - August 29, 2024; and trial - March 17, 2025.

On April 23, 2024, Plaintiff filed her motion to extend the deadlines for the designation of experts, the discovery deadline, and the motions deadline, but did not request an extension of the deadlines for motions to join additional parties or for amendments. On April 24, 2024, this Court granted the motion to extend deadlines. As a result, discovery is currently set to conclude on September 13, 2024, and the deadline for all dispositive motions and *Daubert*-type motions is set for October 14, 2024.

On April 24, 2024, Defendant Sheriff Parker filed a "Motion for Summary Judgment" asserting that the claims against him in his official capacity are merely duplicative of the claims against Quitman County and therefore subject to dismissal. To the extent he is sued in his individual capacity, he argues the complaint fails to state a claim and, in any event, he is entitled to qualified immunity. He also argues that:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation omitted).

Then, on May 16, 2024, Plaintiff filed her Response to Defendant's Motion for Summary Judgment and her Memorandum in Support of her Response. She also filed, of

relevance here, a Motion for Leave to Amend Complaint with no separate supporting memorandum.

The proposed amended complaint seeks to add three new defendants, two of whom are sued in their official capacities in addition to their individual capacities (the remaining third sought to be added is sued in her individual capacity only).[1] Also, a number of other miscellaneous additions are proposed in the amended complaint including well over fifty (50) new paragraphs containing a range of allegations against the defendants, including Sheriff Parker, all of which appear under the caption "Facts".

The defendant Sheriff opposes the motion to amend the complaint based on the following arguments:

1) Plaintiff failed to File a Separate Memorandum in Support of Her Motion to Amend Pursuant to Rule 7(b)(2) & (4) of the Local Uniform Civil Rules, and even if deemed not to have done so, she failed to link any memo otherwise appearing on the docket to her Motion in violation of *Admin. Proc.* Rule III(A)(6). Finally, even had she properly linked same, she would then be in gross violation of the page limitation for memorandum set out in Rule 7(b)(5);

2) Plaintiff has not and cannot satisfy the required "good cause" standard under Rule 16 of the Federal Rules of Civil Procedure;

3) Plaintiff has not and cannot satisfy the standard of "excusable neglect" as provided by Fed. R. Civ. Pro. Rule 6(b)(1)(B); and

4) The amendment would be futile.

---

[1] Though the original complaint included John and Jane Doe Defendants 1-100, Plaintiff does not seek to add the new defendants as substitutes for any of the Doe defendants.

As discussed more fully below there are four relevant factors to consider when determining whether there is "good cause" under Rule 16(b)(4); there is a non-exclusive list of similar factors to consider in making the "excusable neglect" inquiry under 6(b)(1)(B); and, a 12(b)(6) failure to state a claim analysis applies when examining futility.

## Discussion

I. **No separate memorandum to support the motion to amend, no proper linkage to any memo and violation page limitation even if so.**

Pursuant to Rule 7(b)(2) & (4) of the Local Uniform Civil Rules, any written communication with the Court intended as an application for relief must be presented by a motion in the form prescribed by Rule 7, must include a separately filed memorandum brief in support of the motion, and the memorandum brief must be filed as a separate docket item from the motion to which it relates. Rule 7(b)(4) states that the failure to timely submit the required motion documents, such as a supporting memorandum, may result in the denial of the motion. Furthermore, Rule III(A)(6) of the Administrative Procedures for Electronic Case Filing provides that memoranda in support of a pleading must be filed separately and shown as a related document to the motion.

In reply to the sheriff's opposition to her motion to amend, Plaintiff acknowledges that she filed no separate memorandum in support of the same, noting instead she made reference in the motion itself to a responsive memorandum she filed in opposition to the sheriff's motion for summary judgement, though she did not link her motion to amend to that memo. Perhaps more concerning is the fact that in her reply to Defendants' responsive memo in opposition to her motion to amend, Plaintiff again, rather than making substantive argument and citing authorities

therein, simply makes a passing reference to the entirety of yet another memo appearing on the docket. Namely, she instructs the court that she "has addressed both the good cause standard and the excusable neglect standards in a memo that accompanies her recently filed Motion to Modify the Scheduling Order and/or in the Alternative for an Extension of Time."

Given such meaningless references to the entirety of unlinked memoranda that are filed in support of other motions (which memos total collectively over 60 pages in length), even were the court to accept such an unreasonable argument, the plaintiff would then have violated the 35-page limitation on supporting/responsive memoranda under Rule 7(b)(5). In short, I find Plaintiff's counsel has paid little to no attention to the rules applicable to briefing in this court, and he is admonished that doing so in the future will have consequences. As for the present, however, I do not find the aforementioned rule infractions sufficient alone to warrant denial of the motion to amend.

## II. The Good Cause Inquiry

The four relevant factors to consider when determining whether there is good cause under Federal Rule of Civil Procedure 16(b)(4) for a tardy motion to amend are: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (citations omitted). If the movant satisfies the requirements of Rule 16(b)(4), then "the more liberal standard of Rule 15(a) will apply." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

As noted, Plaintiff's counsel has deferred addressing the good cause and inexcusable neglect standards in either a memo in support of her motion to amend or in her reply memo she

filed in support of that motion. Instead, Plaintiff's counsel opted only to reference a 16-page memo filed in support of another motion—this one to amend the scheduling order and extend deadlines [Doc. No. 73]. In that memo, Plaintiff argues, as to the first of the good cause factors, the following at page 7:

> (1) the explanation for the failure to timely[sic] amend: Unlike in Squyres the Plaintiff herein has explained the delay in filing the motion for leave to amend. The procedural history as outlined above indicates that the Plaintiff has been diligently and actively pursuing the litigation, receiving information from the Defendants that was subject to initial disclosures over time and their responses to discovery March 7 and did not have the facts to file the Amended Complaint in good faith prior to the time of filing the Motion for Leave to Amend. Plaintiff requested deposition dates one week after receiving the written responses to discovery and persisted in seeking deposition dates until they were secured. Defendant Parker was allowed to delay filing a Motion to Dismiss or other motion for Qualified Immunity by agreement in the scheduling order and did not until after the deadline for amending pleadings and joining parties had run. Plaintiff sought to amend the complaint in response to that motion when it was filed as one typically does in response to a motion to dismiss and it is not unusual in a civil rights case to have more than one amendment during discovery. *Wooten v. Roach,* 964 F.3d 395, 401 (5th Cir. 2020) [in which the District Court had allowed a second amended complaint prior to the appeal being filed] See also the reason for the delay herein below subpart II (3).

I respectfully find this passage confusing and inaccurate. For example, while counsel asserts that he "did not have facts to file the Amended Complaint in good faith prior to the time of filing the Motion for Leave to Amend", one of the principal purposes of the proposed amendment was to add three new defendants. It appears Plaintiff was, by virtue of defendants' disclosure and early discovery responses, in fact, aware (or should have been) of their identities prior to the amendment deadline on March 14, 2024.

As for counsel's suggestion that because he agreed in the CMO to the delay in any filing of a qualified immunity motion at the outset of the discovery period (thus avoiding a non-discretionary stay of all discovery in the case from that point until resolution of the qualified immunity motion), that his tardiness in filing the motion to amend should be forgiven, I find it

unpersuasive. Instead, whether and when the sheriff brought on his qualified immunity motion has nothing to do, for example, with the inclusion of 3 new defendants in this case.

In short, Plaintiff simply has not offered any explanation at all for his delay in adding the proposed new defendants. And, as best I can discern, the reason counsel offers for not amending the complaint earlier to assert the fifty (50) paragraphs alleged of additional "facts" with respect to the conduct of the sheriff – that being that counsel was waiting to see what the sheriff would rely on to support any qualified immunity motion – is likewise unimpressive. In sum, I do not find this factor to weigh in favor of a finding of good cause.

As to the second factor of the good cause inquiry, I do find the amendment is important. First, the amendment allows for the addition of the three officers as defendants. As for the additional "facts", Plaintiff's counsel suggests at pp. 8-9 of the plaintiff's memo [Doc. No. 74] in support of extending the deadlines – and as defense counsel would presumably agree, given the assertion that the complaint fails to state a cause of action – that "[w]ithout the amendment the complaint may likely fall short and may be subject to dismissal without prejudice under Rule 12(b)(6) or Rule 56."[2] In short, I find this factor to weigh in favor of the amendment.

As for the 3rd and 4th good cause factors, I find that given the relative modesty of the delay in filing the motion to amend (the motion was filed roughly two months to the date after the deadline expired) *and* the relative youth of this case in federal court, any modest prejudice resulting can be cured by a meritorious motion for continuance. In all, I find on balance sufficient good case exists to allow the amendment.

The court now decides under the previously articulated, and more lenient, Rule 15(a) standard whether leave to amend should be granted. *See S & W Enters.*, 315 F.3d at 536. In

---

[2] The undersigned makes no determination of the merits of the motion for summary judgment, the same being only within the purview of the District Judge assigned this case.

doing so the court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment. *Id.* As there are no allegations of bad faith or repeated failures to cure deficiencies, and for the reasons expressed above and below, the court concludes amendment should be granted under 15(a).

### III. Excusable Neglect

Relevant factors to consider in conducting the excusable neglect inquiry under Rule 6(b) include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 n. 8 (5th Cir. 2006) (quoting *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1076 (5th Cir. 1980)).

These factors are, with the exception of whether the movant's delay was motivated in bad faith (which is not contended here), essentially the same as those addressed above under the good cause analysis. Accordingly, I find that the excusable neglect factor tilts, too, in favor of the amendment.

### IV. Futility

As for futility, I decline to make such analysis here for a number of reasons. They include that the merits of that dispositive argument were already pending before the District Judge assigned this case by virtue of the earlier-filed motion for summary judgment, and, in any event, doing so would not be dispositive of the amendment issue altogether since no substantive

argument has been raised that the proposed claims, as asserted against the three new defendants, are futile.[3]

## Conclusion

IT IS THEREFORE ORDERED that Plaintiff's motion for leave to amend is granted. Plaintiff is hereby directed to file her proposed amended complaint [Doc. No. 59-1] within one (1) business day on the docket and proceed with service forthwith thereafter.

**SO ORDERED,** this the 1st day of July, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Instead, the defendant sheriff opted to assert, in only a singular and conclusory fashion, that "…those claims too must fail for futility as individuals are entitled to qualified immunity." See [Doc. No 65] at 18, citing in a footnote in support thereof to 8 pages of his 20-page memo in support of his motion for summary judgment [Doc. No. 50].