UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

KENDRA JONES, Individually and as
Personal Representative on Behalf of
the Wrongful Death Beneficiaries of
TYRONE JONES, Deceased                                                          PLAINTIFF

vs.                                                        Civil No. 3:23-cv-00455-GHD-JMV

QUITMAN COUNTY, MISSISSIPPI, et al.                                            DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is Defendants Quitman County, Mississippi; Sheriff Oliver Parks, Jr.; Chief Deputy Peter Clinton; and Deputy William Horhn's ("Defendants") Motion for Summary Judgment [Doc. No. 118]. Also before the Court is Plaintiff Kendra Jones's ("Plaintiff") Motion to Strike [128][1] and Defendants' Motion to Strike Plaintiff's Inadmissible Exhibits to Her Summary Judgment Response [168]. The Court will address each in turn.

### *I.  Factual & Procedural Background*

This § 1983 action arises from Tyrone Jones's tragic suicide that occurred on June 19, 2022, at the Quitman County Jail [119]. The events leading up to this tragedy began on June 18, 2022, when the Quitman County Sheriff's Department responded to a call about a man sitting in a car with alleged self-inflicted throat injuries [50; 127]. However, a subsequent caller notified the Quitman County Sheriff's Department Tyrone Jones's wife, Kendra Jones, had stabbed Tyrone in the neck with scissors during a domestic dispute [50; 127]. Before Defendants Lieutenant Williams and Sergeant Pryor arrived at the scene, the Quitman County Ambulance Service notified them Tyrone was en route to Quitman County Community Hospital [50]. The

---

[1] The Court notes here—although a lengthier analysis follows—it denies Plaintiff's Motion to Strike [128], and the Court utilizes all of Defendants' MBI Investigative Report [118-1] in drafting this Opinion. See *Cooper v. Meritor*, No. 4:16-cv-52-DMB-JMV, 2019 WL 545253 (N.D. Miss. Feb. 11, 2019).

1

two defendants "made contact" with Tyrone there, and he confirmed his injuries were sustained during the domestic dispute [50; 127]. According to Defendants, they also investigated the Jones' residence where they found "convincing evidence of the crime of domestic violence," and "collected evidence such as scissors, a knife, and hair that Plaintiff reported had been torn from her" [50].

Hospital staff then released Tyrone into Defendants' custody, and under the charge of domestic violence and simple assault, Sergeant Pryor transferred him to the Quitman County Jail [50; 127]. Arriving at 10:00 P.M., "Jailer/Dispatcher Horhn booked Tyrone Jones into the jail," and noted he was intoxicated but not belligerent [50; 127]. After his booking, Tyrone called his mother and was then escorted to jail cell number one as its sole occupant [50; 127]. Shortly thereafter Tyrone requested a blanket, and Defendant Horhn provided one for him [50; 127]. Defendant Horhn later commenced his regular "jail checks" at 11:00 P.M., 12:00 A.M., 1:00 A.M., and 2:00 A.M. [118-1 p. 59]. During the 1:00 A.M. check, Tyrone requested to call his attorney but refrained after discovering he had only his attorney's office phone number [50; 127]. Defendant Horhn then failed to conduct his scheduled check at 3:00 A.M. to book another inmate [118-1 p. 59, 70] but found Tyrone Jones hanging from his cell window with the torn blanket around his neck at approximately 4:30 A.M. [50; 127].

Plaintiff subsequently filed this present action in Quitman County Circuit Court [2], and Defendants removed to this Court [1]. Defendants later filed their Motion for Summary Judgment [118], and Plaintiff responded [126].

## *II.  Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact

2

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### *III. Analysis*

The following discussion resolves both parties' motions to strike [128; 168] and Defendants' Motion for Summary Judgment [118]. The Court first adjudicates the motions to strike given their obvious impact on the summary judgment analysis.

### A. Plaintiff's Motion to Strike

Plaintiff seeks to strike Defendants' MBI Investigative Report [118-1] pursuant to Federal Rule of Civil Procedure 56(c)(4), which states, "An affidavit or declaration used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Plaintiff contends the report violates Federal Rules of Evidence 702, 803, 805, 901, and 902 [129 p. 3]. Plaintiff's 702 argument is meritless because "Rule 702 is inapplicable to public records." *Cooper v. Meritor*, No. 4:16-cv-52-DMB-JMV, 2019 WL 545253, *3-4 (N.D. Miss. Feb. 11, 2019). The MBI Investigative Report is also a self-authenticating document under Rule 902 because it bears the Quitman County Sheriff Department's seal, and proper authorities have signed it [118-1]; therefore, neither Rule 901 nor 902 call for the document's exclusion. To determine whether hearsay rules 803 and 805 demand exclusion, the Court must conduct a lengthier analysis.

The parties agree Defendants' MBI Investigative Report [118-1] should be analyzed as a public record under Federal Rule of Evidence 803(8). "A record or statement of a public office" is not excluded as hearsay:

> if (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation.

Fed. R. Evid. 803(8).

4

"The party opposing admission of a public record bears the burden of showing the document is untrustworthy." *Cooper*, at *4 (citing Fed. R. Evid. 803(8)(B); *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)). Trustworthiness is evaluated using four non-exclusive factors: "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." *Id.* (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 154, 167 n.11 (1988)) (internal quotation marks omitted). The Fifth Circuit takes this test one step further, directing district courts "to consider the methodology underlying the [the public record];" that is, the challenging party "must demonstrate [the public record] was compiled utilizing methods that cannot be relied upon." *Id.* (citing *Eason v. Fleming Cos., Inc.*, No. 92-1390, 1993 WL 360736, at *3 (5th Cir. Aug. 24, 1993)) (internal quotation marks omitted).

Plaintiff has failed to show the MBI Investigative Report is untrustworthy. Plaintiff bears that burden, and she has failed to provide the Court with *any* evidence showing the investigation was untimely; the investigators were unskilled or inexperienced; whether a hearing was held; or any possible bias when the report was prepared. Plaintiff does however cite the MBI Investigative Report—the very evidence she seeks to exclude—extensively claiming Defendant Horhn "lied in his statement or in the records about his monitoring times" [129 p. 3]. This is speculative at most, and after the Court's review of the cited material, it found a mere fifteen minutes' difference in the time stated in Defendant Horhn's written statement [118-1 p. 59] and that of the Investigative Report's summary [118-1 p. 2]. Plaintiff further alleges Defendant Chief Deputy Peter Clinton "failed to include the information received about" Tyrone Jones's suicidal desires "the morning of the suicide" [118-1 p. 3]. These speculations and Plaintiff's "should

5

have" statements are simply not enough to show the report is untrustworthy; therefore, the Court must deny Plaintiff's Motion to Strike the MBI Investigative Report.

### B. Defendants' Motion to Strike

Defendants seek to strike with various arguments a total of eight exhibits Plaintiff attached to her Response to Defendants' Motion for Summary Judgment [126]. Namely, those exhibits include the Affidavit of Maurice Jones [126-8]; the Affidavit of Kendra Jones [126-9]; the Affidavit of Jennett Gant [126-11]; the Deposition of Sheriff Parker [126-7]; the Deposition of Administrator Mabry [126-14]; the Deposition of Marvin Pryor [126-19]; the Graceland Recovery Records [126-6]; and the Discharge Documents for Rehab Facility [126-20]. The Court will address each of Defendants' arguments with their corresponding exhibits.

#### 1. Federal Rule of Civil Procedure 56(c)(4)

Like Plaintiff, Defendants first invoke Rule 56(c)(4) to strike the affidavits of Maurice Jones [126-8], Kendra Jones [126-9], and Jennett Gant [126-11] as incompetent summary judgment evidence [169]. The Kendra Jones [126-9] and Jennett Gant [126-11] affidavits are resolved in a later discussion on different grounds. For clarity, however, the Court provides those specific statements from Maurice Jones's affidavit [126-8] requiring exclusion:

*Affidavit of Maurice Jones*:

- Paragraph 4, "she told the jailer that our brother needed to be watched for suicide because she thought he was going to kill himself." Excluded under Rules 803 and 602.

- Paragraph 6, "he said that our brother should have been put in a room with a camera but was not." Excluded under Rule 803.

6

Both of these statements require exclusion for the purposes set out above, and the Court finds them incompetent evidence for summary judgment purposes.

### 2. Federal Rule of Civil Procedure 37(c)(1)

Turning now to Defendants' request to strike the affidavits of Kendra Jones [126-9] and Jennett Gant [126-11] under Rule 37(c)(1), which states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.

Rule 26(a)(1)(A)(ii) applies because "a party must, without awaiting a discovery request provide to the other parties: . . . (ii) a copy . . . of all documents . . . the disclosing party has in its possession . . . and may use to support its claims, unless the use would be solely for impeachment."[2] According to the rule's plain language, Plaintiff was required to disclose the two affidavits, and she failed to do so, opting instead to attach them to a response motion [126].

The Fifth Circuit has provided the next step in this analysis; namely, a four-factor test for the determination of striking evidence under Rule 37. *Allen v. Vaksman Law Offices, P.C.*, No. 2:19-cv-30-TBM-MTP, 2021 WL 5474488, *11 (S.D. Miss. Sep. 30, 2021) (citing *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003); see also *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015)). Under that test, district courts must consider "(1) the importance of the evidence; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice by granting an extension; and (4) the explanation for the party's failure to disclose." *Id.* Plaintiff acknowledges this test, but provides only conclusory,

---

[2] Plaintiff acknowledges the impeachment exception in the supporting memorandum to her Response to Defendants' Second Motion to Strike [178 p. 2] ("Parties are not required to disclose information that is intended to be used solely for impeachment"). However, no language in her Response indicates she is arguing the affidavits in question will only be used for impeachment purposes. Therefore, the Court assumes she is not.

7

self-serving statements, the apex being, "There would be no factor that favors exclusion" [178]. This Court finds just the opposite.

When determining the importance factors, courts ask whether the "new evidence is essential to [a party's] underlying recovery." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Here, the affidavits in question are not essential because Plaintiff has already relied heavily on the MBI Investigative Report [126-1] showing much the same information as that in the affidavits. As a result, Plaintiff fails under the first prong.

The second prong asks what prejudicial effect would occur if the contested evidence were admitted, and the third asks whether that harm can be cured. The Fifth Circuit answers both in its *CQ, Inc. v. TXU Min. Co.* opinion where it found this stage in the litigation process (*i.e.*, post discovery but pretrial) an "advanced stage." 565 F.3d at 280. That court went on to explain "permitting new evidence [at this stage] would not [be] harmless," providing no possibilities of cure for that late-stage harm. *Id.* (citing *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery . . . [and] [s]uch modifications to . . . schedules supports a finding that the failure to disclose was not harmless."); *NutraSweet Co. v. X–L Eng'g Co.*, 227 F.3d 776, 785–86 (7th Cir. 2000) (finding harm based on scheduling issues). Therefore, Plaintiff fails on the second and third prongs.

In considering the fourth prong, the Court finds no proper "explanation for the [Plaintiff's] failure to disclose." *Allen*, at *11. Plaintiff merely states, "The explanation for not producing those two documents is justifiable" while providing no clear explanation for the lack of disclosure [178]. Therefore, Plaintiff also fails under the fourth and final prong. Because Plaintiff fails on all four prongs of the Fifth Circuit's test, the affidavits of Kendra Jones [126-9]

8

and Jennett Gant [126-11] must be stricken pursuant to Rule 37(c)(1), and the Court will refrain from using them in its decision on Defendants' Motion for Summary Judgment.

### 3. Federal Rule of Civil Procedure 32(a)(8)

The Court now considers whether Defendants' Rule 32(a)(8) argument has merit concerning the depositions of Sheriff Parker [126-7], Administrator Mabry [126-14], and Marvin Pryor [126-19]. Rule 32(a)(8)'s language is clear, this argument has no merit: "A deposition lawfully taken . . . may be used in a later action involving the *same subject matter* between the *same parties*, or their representatives or successors in interest, to the *same extent* as if taken in the later action." Fed. R. Civ. P. 32(a)(8) (emphasis added). The previous action for which the depositions of Sheriff Parker [126-7], Administrator Mabry [126-14], and Marvin Pryor [126-19] were taken does not concern the same parties in the action currently before this Court. Defendants' Rule 30(f) argument is also well taken, and the lack of a signed court reporter certification is fatal to the depositions' admissibility. Having failed to meet Rule 32(a)(8) and 30(f)'s facial requirements, this Court must strike the three depositions and exclude them from use when determining summary judgment.

### 4. Federal Rules of Evidence 901 and 401

Lastly, Defendants request this Court strike Plaintiff's Graceland Recovery Records [133-6] and Rehab Discharge Documents [133-20] exhibits for lacking proper authentication and relevance. Defendants fail on both arguments. Plaintiff has provided the proper authentication with an affidavit from the custodian of records for Graceland Recovery [177-2]. This is enough to overcome Rule 901's authentication requirements for medical records.

Turning to Rule 401 which designates evidence as relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

9

consequence in determining the action." What is more, the Fifth Circuit has defined this relevancy standard as a "low bar." *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 741 (5th Cir. 2020). At such an early stage in litigation, this Court cannot say Plaintiff's exhibits fail to have *any* tendency to make a consequential fact more or less probable. For instance, the Graceland Recovery Records exhibit [133-6] provides significant information on Tyrone Jones's mental health, albeit in the past; however, it can provide the factfinder some idea of symptoms Jones may have been exhibiting until the time of his suicide.

Additionally, the record shows the Rehab Discharge Documents exhibit [133-20] is simply a severed portion from the Graceland Recovery Records exhibit [133-6]; therefore, the reasoning encompasses those documents as well. Plaintiff provides further support for this conclusion by pointing out both documents are attached to the custodial affidavit in the record [177-2]. Therefore, the Court will refrain from striking Plaintiff's Graceland Recovery Records [133-6] and Rehab Discharge Documents [133-20] exhibits and will use them when considering summary judgment.

### C. Defendants' Motion for Summary Judgment

#### 1. Individual Defendants' Qualified Immunity Entitlement

After determining the proper material for consideration, the Court can now discuss Defendants' Motion for Summary Judgment [118]. The Court notes here Plaintiff's Response to Defendants' Motion for Summary Judgment [126; 127] only addresses summary judgment pertaining to Defendant Sheriff Oliver Parker, Jr. and makes no arguments concerning the other Individual Defendants. However, all Individual Defendants claim qualified immunity which "'is an immunity from suit rather than a mere defense to liability.'" *Cleveland v. Bell*, 938 F.3d 672, 675 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). Because Individual

Defendants claim qualified immunity, the burden of proof shifts to Plaintiff to establish "[Individual Defendants] violated [the detainee's] constitutional rights . . . [and] show the asserted right was clearly established at the time of the alleged misconduct." *Rountree v. Lopinto*, 976 F.3d 606, 608-09 (5th Cir. 2020) (quoting *Cleveland*, 938 F.3d at 675-76)) (internal quotation marks omitted).

It is clear from the record Tyrone Jones was a pretrial detainee whose constitutional rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). The Fifth Circuit has explained "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide . . . pretrial detainees . . . with basic human needs, including medical care and protection from harm, during their confinement." *Hare* at 650. This includes protection from "known suicidal impulses." *Branton v. City of Moss Point*, 261 F. App'x 659, 661 (5th Cir. 2008) (citing *Hare* at 650).

To determine whether a constitutional violation of those rights has occurred, plaintiffs "must show that the defendant: (1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'dr[e]w the inference' that the risk existed; and (3) disregarded the risk." *Cleveland*, F.3d at 676 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Therefore, the Court must search the record for facts indicating Defendants subjectively "dr[e]w the inference" Tyrone Jones was at a substantial risk of committing suicide while detained. *Id.*

Plaintiff first points to the dispatcher's receipt of a call on the night in question alleging Tyrone Jones had attempted suicide to support her claim Defendants had subjective knowledge of Jones's suicidal ideations [127]. However, those allegations were soon dispelled after a

11

subsequent caller notified the sheriff's department Plaintiff had stabbed Jones in the neck during a domestic dispute [127]. Jones later confirmed this story to hospital staff and Defendants [50]. Plaintiff also points to several policies in a document entitled Quitman County Sheriff's Office Policies and Procedures to support her claim [127]. While it appears from Plaintiff's allegations Defendants failed to follow quite a few of their own policies, those failures do not rise to the level of "deliberate indifference" required for the denial of qualified immunity, as described below. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647-48 (5th Cir. 1996).

Plaintiff also makes arguments utilizing Jones's prior rehab records, but she provides no basis for the Court to believe the relevant Defendants ever saw those records [127]. Yet, in viewing the facts most favorable to Plaintiff, even if Defendants had seen those records, Defendants would have likely had no basis to believe the facts from those records had any bearing on Jones's mental status on the night in question. Many of Plaintiff's arguments reach only the level necessary for negligence, but negligence is not the required standard here. *Hyatt v. Thomas*, 843 F.3d 172, 178 (5th Cir. 2016) (citing *Hare*, 135 F.3d at 328-29). Therefore, the Court only addresses some of the specific arguments that are more directly to the point of this dispute.

Plaintiff argues Defendants failed to follow their policies concerning intoxicated detainees or those detainees suffering from withdrawals [127]. Specifically, the policy concerning intoxicated detainees states:

> The booking officer will make sure that an intoxicated inmate, or an inmate engaging in bizarre behavior, will be placed in a holding cell and visually supervised until he or she is no longer intoxicated or engaging in bizarre behavior before being placed in a housing unit.

12

[127-3]. The policy specifically concerning detainees with withdrawal symptoms states, "Jail staff should also be aware of secondary indicators of suicidal tendencies such as . . . [a]lcohol or drug withdrawal" [127-3].

Both parties acknowledge Jones was intoxicated from the time of his arrest until his death [50; 127]. However, both parties also acknowledge he was not acting in a "belligerent" manner [50; 127]. Based on the Defendants' policy's language, Defendants should have placed Tyrone Jones in a cell with more visual supervision because he was intoxicated. Yet, this does not rise to the level necessary to show Defendants were "indifferent" or subjectively aware of his risk for suicide. The lack of any belligerent actions only reinforces this conclusion. This of course would also indicate Jones was not suffering from withdrawal symptoms. Indeed, Plaintiff concedes Jones's substantial intoxication at the time of his death, precluding the possibility of withdrawals.

Therefore, Plaintiff's policy arguments provide no indication Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed or subjectively "dr[e]w the inference" Tyrone Jones was at a substantial risk for committing suicide. *Cleveland*, F.3d at 676 (internal quotation marks omitted). As a result, Plaintiff has failed to show a constitutional violation occurred thereby failing to show the Court why it should deny Defendants qualified immunity. Given no dispute as to material fact exists, Defendants' Motion for Summary Judgment must be granted as to Plaintiff's claims against the Defendants in their individual capacities.

### 2. Plaintiff's Municipal and Supervisory Liability Claims

Plaintiff also brings § 1983 claims against the municipality—Quitman County—and Defendant Sheriff Parker in his official supervisory capacity [2]. "Liability for a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation

13

of constitutional rights whose moving force is the policy or custom." *Carvell on behalf of H. A. A. W. v. Gibson*, No. 23-30252, 2024 WL 4533312, *4 (5th Cir. October 21, 2024) (citing *Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020)) (internal quotation marks omitted). Plaintiff alleges "Sheriff Oliver Parker, Jr. is the undisputed final policymaker for Quitman County relative to law enforcement and the jail," so she satisfies the first element [127]. However, her argument breaks down thereafter. Plaintiff does point to several of Defendants' policies, including *de facto* policies, which she claims violated Tyrone Jones's constitutional rights [127]. Yet, this presentation is insufficient to overcome qualified immunity unless Plaintiff can show those policies were the "moving force" of the constitutional violation. As expressed in detail above, Plaintiff has not made the necessary factual showing to support the denial of qualified immunity. Therefore, no dispute as to material fact exists, and Plaintiff's municipal and supervisory liability claims must also be dismissed.

### IV. Conclusion

Having duly considered the arguments of both parties the Court denies Plaintiff Kendra Jones's Motion to Strike [128]; grants in part and denies in part Defendants' Motion to Strike Plaintiff's Inadmissible Exhibits to Her Summary Judgment Response [168] in accordance with the reasoning above; and grants Defendants Quitman County, Mississippi, Sheriff Oliver Parks, Jr., Peter Clinton, and William Horhn's Motion for Summary Judgment [118].

An order in accordance with this opinion shall issue this day.

THIS the 6th day of January, 2025.

_____
SENIOR U.S. DISTRICT JUDGE

14